# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| **Chambers of**<br>**Douglas R. Miller**<br>**United States Magistrate Judge** | **101 West Lombard Street**<br>**Baltimore, Maryland 21201**<br>**MDD_DRMChambers@mdd.uscourts.gov**<br>**(410) 962-7770** |

July 13, 2026

LETTER TO ALL COUNSEL OF RECORD

Re:     *Cassandra T. v. Frank Bisignano, Commissioner, Social Security Administration*
         Civil No. 25-3125-DRM

Dear Counsel:

On September 22, 2025, Plaintiff Cassandra T. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF No. 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301. I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 13, 17 and 18). I find that no hearing is necessary. *See* Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REVERSE the Commissioner's decision and REMAND the case for further consideration. This letter explains why.

## I.      PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on February 2, 2018, alleging a disability onset of January 1, 2018. Tr. 247; 254; 1804. Plaintiff's claims were denied initially and on reconsideration. Tr. 153-158. On December 10, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 15-31. Following the hearing, on January 2, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 301 *et seq.*, during the relevant time frame. Tr. 31. On September 8, 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff filed for judicial review and on August 20, 2021, this Court granted the Commissioner's consent motion to remand. Order, *Cassandra T. v. Saul*, No. JMC-1:20-cv-03137 (D. Md. Aug. 20, 2021), Dkt. No. 15.

Plaintiff had a second hearing before an ALJ on June 28, 2022. Tr. 1008-1022. Following the hearing, on August 10, 2022, the ALJ determined again that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 1022. On June 15, 2023, the Appeals Council declined jurisdiction. Tr. 992-998. Plaintiff again filed for judicial review and on May 24, 2024, this Court granted the Commissioner's consent motion to remand. Order, *Cassandra T. v. Kijakazi*, No. CDA-1:23-cv-02420 (D. Md. May 24, 2024), Dkt. No. 19.

*Cassandra T. v. Frank Bisignano*
Civil No. 25-3125-DRM
July 13, 2026
Page 2

Plaintiff had a third hearing before an ALJ on May 7, 2025. Tr. 1792-1815. Following the hearing, on July 12, 2025, the ALJ determined again that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 1806. The ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since January 1, 2018, the alleged onset date." Tr. 1795. At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "degenerative disc disease, osteoarthritis of the wrists and shoulders, carpal tunnel syndrome status-post right release, chronic obstructive pulmonary disease (COPD), major depressive disorder, and anxiety disorder." Tr. 1795. At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 1795. The ALJ also determined that Plaintiff retained the residual functional capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never work in high, exposed places or in proximity to moving mechanical parts. She can never be exposed to extreme cold, extreme heat, or vibrations. She cannot tolerate excessive exposure to atmospheric conditions. She can understand, remember, and carry out simple instructions and make simple work related decisions. She can perform work without a specific production rate pace, such as on an assembly line or hourly production quotas. She can frequently reach in all directions and frequently handle and finger with the right, dominant upper extremity.

Tr. 1797. At steps four and five, the ALJ determined that Plaintiff had no past relevant work, but that prior to July 17, 2023, the date the claimant's age category changed, she could perform other jobs that existed in significant numbers in the national economy such as marker, order caller, and

Cassandra T. v. Frank Bisignano
Civil No. 25-3125-DRM
July 13, 2026
Page 3

routing clerk. Tr. 1802-03. Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame.[1] Tr. 1804.

## III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla but may be somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

## IV.    ANALYSIS

On appeal, Plaintiff makes three arguments. This opinion focuses on Plaintiff's third argument, that the ALJ failed to define a restriction included in the hypothetical to the vocational expert ("VE"), on which the VE later improperly relied, and then formulated an RFC with the same restriction. ECF No. 13 at 26-31. Specifically, in the hypothetical to the VE, the ALJ posited an individual who "can perform work without a specific production rate pace such as an assembly line or hourly production quotas," and the RFC includes the same restriction that Plaintiff can "work without a specific production rate pace, such as on an assembly line or hourly production quotas." *Id.* at 26; Tr. 1797, 1836-37. Plaintiff argues that the ALJ failed to define the restriction, which is also not defined by regulation, that examples of occupations do not clarify the limitation, and that the error is not harmless because the ALJ relied on the VE's testimony, based on the inadequate hypothetical, to conclude that Plaintiff is not disabled. *Id.* at 26-31.

In response, the Commissioner argues that the ALJ provided "additional context" and "descriptors" to explain the restriction, that the cases cited by Plaintiff are distinguishable, and that the ALJ "pointed to substantial evidence" and "provided sufficient rationale" to support the RFC

---

[1] The ALJ clarified that, "[b]eginning on July 17, 2023, the date the claimant's age category changed, . . . there are no jobs that exist in significant numbers in the national economy that the claimant could perform." Tr. 1804. The ALJ then determined that Plaintiff "was not disabled prior to July 17, 2023, but became disabled on that date. . .." Tr. 1804. The ALJ, therefore, concluded that Plaintiff "was not under a disability within the meaning of the Social Security Act at any time through June 30, 2022, the date last insured." Tr. 1804.

*Cassandra T. v. Frank Bisignano*
Civil No. 25-3125-DRM
July 13, 2026
Page 4

finding. ECF No. 17 at 13-15. In reply, Plaintiff reiterates her arguments and argues that Defendant failed to resolve the issues in his brief. ECF No. 18 at 8-9.

In *Thomas v. Berryhill*, the Fourth Circuit found that an ALJ's RFC limitation excluding work that "require[d] a production rate or demand pace" prevented meaningful judicial review because the ALJ failed to explain what those phrases meant. 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019). With "production rate" and "demand pace" left undefined, the court concluded that it was "difficult, if not impossible" to determine "whether their inclusion in [the] RFC is supported by substantial evidence." *Id*. Without deciding whether the RFC itself was substantively correct, the court remanded for "a clearer window into" the ALJ's reasoning. *Id*. at 313, n.5.

Although the court in *Thomas* identified additional grounds for remand, later decisions have relied solely on the failure to define ambiguous RFC terms as sufficient justification for reversal. *See Perry v. Berryhill,* 765 F. App'x 869, 873 (4th Cir. 2019) ("Because the ALJ's failure to explain the meaning of 'non-production oriented work setting' requires us 'to guess about how [she] arrived at [her] conclusions' and leaves us 'uncertain as to what [she] intended,' we conclude that her assessment is 'lacking in the analysis needed for us to review meaningfully [her] conclusions'") (quoting *Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015)). *See also, e.g., Adrian H. v. Comm'r, Soc. Sec. Admin.*, No. SAG-20-3268, 2022 WL 112033, at *1 (D. Md. Jan. 12, 2022) (remanding where an "ALJ presented the VE with a hypothetical including 'no fast pace or strict production requirements,' with no further definition of those terms"); *Trena Sue Y. v. Kijakazi*, No. DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021) (remanding where RFC limited plaintiff to work "requiring no fast paced production," which the court analogized to the terms in *Thomas* and *Perry* "both in form and defect"); *Jennifer Anne S. v. Saul*, No. TMD-20-519, 2021 WL 2139432, at *5 (D. Md. May 26, 2021) (remanding where RFC limited plaintiff to work "which would not require a fast pace or production quotas such as would customarily be found working on an assembly line" and collecting cases remanding based on similar undefined RFC terms); *Geneva W. v. Comm'r, Soc. Sec. Admin.*, No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. July 19, 2019) ("First, while the phrase 'production rate pace' is used in an appendix to the DOT, a definition is not provided. Second, the term 'production pace or strict production quotas' is directly analogous to the term deemed problematic in *Thomas*, and the Court cannot ascertain how the inclusion of the word 'strict' would cure the problem identified by the Fourth Circuit.")[2]; *Nora P. v. Comm'r Soc. Sec.*, No. SAG-18-1604, 2019 U.S. Dist. LEXIS 68383, at *4-

---

[2] The term "production rate pace" appears in Appendix C to the Department of Labor's *Dictionary of Occupational Titles* ("DOT"), in a section enumerating three situations in which occupations that would otherwise be classified as "sedentary work" (because the amount of weight lifted is negligible) instead qualify as "light work." The third such situation is: "when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C — Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The discussion goes on to explain: "NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a

*Cassandra T. v. Frank Bisignano*
Civil No. 25-3125-DRM
July 13, 2026
Page 5

5 (D. Md. Apr. 23, 2019) (remand warranted where RFC failed to define phrase "no fast pace or strict production requirements.").

Some cases have affirmed RFC language or VE hypotheticals in which ALJs have elaborated on "production rate pace," or similar terms, with additional descriptors or examples. *Briana H. v. O'Malley*, No. CDA-23-1288, 2024 WL 4349836, at *5 (D. Md. Sept. 30, 2024) (affirming where "here, unlike in *Thomas*, the ALJ defined 'production rate' in the hypothetical question to the VE explaining that the 'no production rate requirement' meant 'assembly line work.'"); *Jackie W. v. Comm'r, Soc. Sec. Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *4 (D. Md. Nov. 13, 2019) (affirming where RFC excluded "fast-paced production work" and ALJ stated to VE "[a]nd they could not perform work that would require fast-productivity goals, like — like assembly-line work."). *See also Melissa J. v. Kijakazi*, No. 22-1003-BAH, 2023 WL 206686, at *3 (D. Md. Jan. 13, 2023) (collecting cases which "have held a limitation on 'production rate or pace' combined with a prohibition on quotas provides enough detail for judicial review.")

However, the Fourth Circuit subsequently held in *Linger v. Comm'r of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025), that the phrase "no fast paced production requirements such as assembly line work or piecemeal quotas," was not an adequate description of a limitation because "though the ALJ provided some examples, there [was] uncertainty as to the intended scope of the limitation, and such uncertainty preclude[d] meaningful review as to whether there is a logical bridge between the evidence in the record and the ALJ's conclusion." *Linger*, 2025 WL 40548, at *5 (citing *Perry*, 765 F. App'x at 872). The Court finds the reasoning of *Linger* persuasive[3] in elucidating the holding of *Thomas* for situations where ALJs provide examples such as assembly line work or time- or piece-based quotas. These examples do not ultimately clarify the meaning of terms like "a production rate or demand pace," *Thomas*, 916 F.3d at 312, or "fast paced production requirements," *Linger*, 2025 WL 40548, at *4, and it is questionable whether the outcomes of *Briana H.*, *Jackie W.*, or *Melissa J.* could be the same following this elucidation.

Here, the RFC term "a specific production rate pace," Tr. 1797, is "analogous to the terms in *Thomas* ('production rate' or 'demand pace') and *Perry* ('non-production oriented work setting'), both in form and defect." *Trena Sue Y.*, 2021 WL 4034264, at *4. The examples given: "such as on an assembly line or hourly production quotas," Tr. 1797, fail to clarify the term's meaning for the same reason that the examples "such as assembly line work or piecemeal quotas"

---

worker even though the amount of force exerted is negligible." *Id.* Nearly-identical language appears in the DOT's companion volume, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"), Appendix C – Physical Demands: "working at a production rate pace while constantly pushing or pulling materials even though the weight of the materials is negligible." However, no definition is given of "production rate pace" in either volume, and the term's use in this narrow context does not elucidate a general meaning.

[3] Unpublished Fourth Circuit opinions are "cited for the persuasiveness of their reasoning, not for any precedential value." *Ortiz v. Ben Strong Trucking, Inc.*, 624 F. Supp. 3d 567, 580 (D. Md. 2022).

*Cassandra T. v. Frank Bisignano*
Civil No. 25-3125-DRM
July 13, 2026
Page 6

failed in *Linger*. Indeed, this Court has recently remanded very similar formulations for the same reasons. *Nicka D. v. Bisignano*, No. DRM-25-3053, 2026 WL 1855652, at *2 (D. Md. June 27, 2026) ("work requiring a specific production rate, such as assembly line work or work that requires hourly quotas"); *Alycia H. v. Bisignano*, No. DRM-25-3114, 2026 WL 1855650, at *2 (D. Md. June 27, 2026) (same); *Orion G. v. Bisignano*, No. DRM-25-2819, 2026 WL 1328157, at *2 (D. Md. May 13, 2026) (same); *Mark M. v. Bisignano*, No. EA-24-3738, 2026 WL 739424, at *7 (D. Md. Mar. 16, 2026) (same). *See also Alkein C. v. Bisignano,* No. TJS-25-1310, 2026 WL 1266164, at *1 (D. Md. May 8, 2026) ("no production rate for pace of work (e.g., assembly-line work)"); *Al-Nissa J. v. Bisignano*, No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026) ("specific production rate pace, such as assembly line work or an hourly production quota"); *Jason M. v. Bisignano*, No. DRM-25-0358, 2026 WL 523879, at *2-*4 (D. Md. Feb. 25, 2026) ("specific rate production, such as assembly line work or work that requires hourly quotas"); *Chad H. v. Bisignano*, No. DRM-25-0380, 2026 WL 483338, at *3-*5 (D. Md. Feb. 20, 2026) ("specific production rates").

For the same reasons, it is difficult for the Court to ascertain whether it was possible for the VE to know whether a person limited to work "without a specific production rate pace" could perform the job functions of marker, order caller, and routing clerk. The mere inclusion of illustrative examples does not define or explain the scope of the restriction or establish the logical bridge between the evidence and the RFC limitation required for judicial review.

Because the case is being remanded on other grounds, the Court need not address Plaintiff's other arguments. On remand, the ALJ is welcome to consider those arguments and make any required adjustments to the opinion. Additionally, in remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be docketed as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge